## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE

Joseph M. LeDoux

      v.                               Civil No. 06-cv-268-PB

Superintendent, Rockingham County
House of Corrections, et al.

## REPORT AND RECOMMENDATION

Pro se plaintiff Joseph M. LeDoux has filed a complaint and amendment thereto, pursuant to 42 U.S.C. § 1983, alleging that defendants have abridged his rights under the First and Fourteenth Amendments to the United States Constitution (document nos. 1 and 6).  Seeking injunctive and monetary relief, he brings this action against the Rockingham County House of Corrections ("RCHOC") and the following RCHOC employees: Superintendent Albert Wright; Major Blomeke; Captain Steven Church; Sergeant Horne; corrections officers Valencia, Sparks, Haywood and Trainor; and an unnamed corrections officer.

The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief may be granted.  See 28 U.S.C. § 1915A; U.S. District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).

For the reasons stated below, I find that LeDoux has alleged the following claims: (1) First and Fourteenth Amendment denial of access to the courts claims against Wright, Blomeke and Church; (2) Fourteenth Amendment due process claims against Haywood, Trainor, Horne, Wright, Blomeke and Church; and (3) First and Fourteenth Amendment retaliation claims against Haywood, Trainor, Wright and an unnamed corrections officer.  I recommend dismissal of all remaining claims.

### Standard of Review

In reviewing a pro se complaint, this Court must construe the pleading liberally and in favor of the pro se litigant.  See Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that pro se pleadings are given fair and meaningful consideration.  See Eveland v. Director of CIA, 843 F.2d 46, 49

(1st Cir. 1988).  I apply this standard in reviewing LeDoux'
complaint.

<u>Background</u>

LeDoux is currently confined as a pretrial detainee at the
RCHOC.  During his confinement, LeDoux claims, defendants have
abridged his First and Fourteenth Amendment rights by denying him
adequate access to the law library and its resources, subjecting
him to discipline without due process and retaliating against him
for filing administrative grievances.

Access to Law Library

In Counts 1-2 and 6 of the complaint, LeDoux alleges that
Wright, Blomeke and Church have denied him adequate access to the
RCHOC law library and its resources.  He further alleges that the
library resources available at the RCHOC are incomplete, obsolete
and poorly maintained.  Because the law library is devoid of any
state or federal reporters, LeDoux claims, his efforts to obtain
copies of decisions are extremely burdensome and time-consuming.
In support of his claims, he alleges that the following RCHOC law
library policies are unconstitutional[1]:

---

[1]LeDoux further alleges that under RCHOC policy "legal
materials must be relevant to present incarceration at this
facility", however, this allegation is unclear and unsupported by
facts.

- inmate requests are honored in the order in which
  they are received;

- the opportunity to access the law library and use
  legal reference materials depends on staff
  availability and order of the request;

- an officer escorts each inmate to the location
  where legal materials are shelved and remains with
  the inmate;

- RCHOC law library policy fails to address state
  and federal decisions and on-line services; and

- the RCHOC law library is "a closet filled with
  outdated books" with no supplies, such as,
  typewriters, staplers or a copy machine.

According to LeDoux, defendants' actions in denying him
adequate access to the library, combined with RCHOC policies
limiting his use of the library, have interfered with his ability
to research, defend and prosecute his civil and criminal actions.
Specifically, LeDoux alleges that Wright, Blomeke and Church
denied him adequate access to the law library in July 2006,
thereby interfering with his ability to prepare for a habeas
corpus hearing and causing the habeas petition to be dismissed.
Wright allegedly has failed to adjudicate LeDoux' grievances
pertaining to the deprivations.

Disciplinary Proceedings

In Counts 3-5 of the complaint, LeDoux alleges that
defendants subjected him to discipline without due process and

4

retaliated against him for filing administrative grievances.  On
May 20, 2006, Haywood and Trainor filed a false disciplinary
report, charging LeDoux with tampering with a security device.
The disciplinary report allegedly was filed against LeDoux in
retaliation for his prosecution of administrative grievances.  On
May 22, 2006, an unnamed corrections officer filed a second
disciplinary report, charging LeDoux with possessing contraband
(a cigarette).  While LeDoux was in the process of moving into a
cell, the officer allegedly found a cigarette in the common area
of the cell.  Although the officer was unable to determine who
possessed the cigarette, he nevertheless wrote up an incident
report and charged LeDoux with possession of contraband.

On May 23, 2006, LeDoux received a "Disciplinary Board
Hearing Notice", charging him with (1) tampering with a security
device and (2) possession of contraband (a cigarette).  On May
24, 2006, LeDoux requested Wright to provide him with additional
information pertaining to the charges and an opportunity to
present testimony from two witnesses, all of which he deemed
necessary to present a defense.  One witness allegedly intended
to testify to committing the offense of tampering with the
security device.  The other witness allegedly intended to testify
to ownership of the cigarette.  That evening, over his objections

5

that he was denied discovery, LeDoux was called to a disciplinary
hearing commenced by Horne, Valencia and Sparks.  During the
hearing, Horne denied having receiving LeDoux' request for
discovery.  Horne then explained that LeDoux was guilty until
proven innocent and proceeded with the hearing despite the
Disciplinary Board's ("Board") failure to produce the security
device in question.

LeDoux was found guilty on both charges and sanctioned to
twenty days of "privilege restriction lock-up or isolation" in
which he was stripped of all privileges, including visits,
reading material, television and newspapers.  While the complaint
is unclear, LeDoux appears to allege that he never received a
written statement specifying the reasons for the disciplinary
action taken against him and the sanctions imposed.  He filed a
notice of appeal with Wright and also requested the Board to
issue a stay.  Horne denied LeDoux' request for a stay and
allegedly knew that the sanctions would be served before the
appeal could be reviewed.  Wright subsequently review the appeal
and overturned the contraband charge but upheld the security
device charge.  LeDoux further claims that Wright failed to
provide him with written notice of the ruling.

On June 7, 2006, LeDoux was served with a second

"Disciplinary Board Hearing Notice", charging him with (1)
disorderly conduct: threats and (2) disobeying an order from a
room-mate.  That day, he was placed in the "privilege restricted
block" for the above disciplinary infractions.  He was further
notified that a hearing would commence on or before June 11,
2006.  On June 8, 2006, LeDoux requested additional information
pertaining to the charges and an opportunity to cross-examine the
charging officers, all of which he deemed necessary to present a
defense.  A disciplinary hearing allegedly was never held.
Despite this fact and LeDoux' objections to the denial of a
hearing, Wright, Blomeke and Church confined him in disciplinary
segregation and denied him certain privileges for one month,
including outdoor recreation, television and out-of-cell time.
LeDoux broadly alleges that the disciplinary charges imposed
adversely affect his good time credit.

Discussion

I.   Section 1983 Claims

Section 1983 creates a cause of action against those who,
acting under color of state law, violate federal law.  See 42
U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981);
accord Conn v. Gabbert, 526 U.S. 286, 290 (1999).  In order to be
held liable for a violation under Section 1983, a defendant's

7

conduct must have been a cause in fact of the alleged
constitutional deprivation.  See <u>Monell v. Dep't of Soc. Servs.</u>,
436 U.S. 658, 692 (1978); <u>Soto v. Flores</u>, 103 F.3d 1056, 1061–62
(1st Cir. 1997).  The premise of LeDoux' Section 1983 action is
that defendants subjected him to the following constitutional
deprivations in violation of his First and Fourteenth Amendment
rights.

A.   <u>Access to the Courts</u>

LeDoux alleges that defendants have abridged his First and
Fourteenth Amendment rights by denying him adequate access to the
RCHOC law library and denying him adequate library resources.

"It is undisputed that inmates have a fundamental
constitutional right of access to the courts."  <u>Carter v. Fair</u>,
786 F.3d 433, 435 (1st Cir. 1986) (citing <u>Bounds v. Smith</u>, 430
U.S. 817, 828 (1977)).  This right of access "requires prison
authorities to assist inmates in the preparation and filing of
meaningful legal papers by providing prisoners with adequate law
libraries or adequate assistance from persons trained in the
law."  <u>Id.</u>  <u>See</u> <u>also</u> <u>Boivin v. Black</u>, 225 F.3d 36, 42 (1st Cir.
2000).  Prisons "are not required to provide comprehensive legal
representation for inmates"; rather, prisons "must provide enough
assistance so as to "'protect[ ] the ability of an inmate to

8

prepare a petition or complaint.'"   <u>Carter</u>, 786 F.2d at 435

(citing <u>Bounds</u>, 430 U.S. at 828)).

     To establish a claim that this right of access has been

denied, an inmate must allege that he suffered actual injury.

<u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996).  "Because <u>Bounds</u>

did not create an abstract, freestanding right to a law library

or legal assistance, an inmate cannot establish relevant actual

injury simply by establishing that his prison's law library or

legal assistance program is subpar in some theoretical sense."

<u>Id.</u> at 351.  Rather, he must demonstrate that the alleged

shortcomings in the law library or legal assistance program

"hindered his efforts to pursue a legal claim." <u>Id.</u>  ("He might

show, for example, that a complaint he prepared was dismissed for

failure to satisfy some technical requirement which, because of

deficiencies in the prison's legal assistance facilities, he

could not have known.  Or that he had suffered arguably

actionable harm that he wished to bring before the courts, but

was so stymied by inadequacies of the law library that he was

unable even to file a complaint.").

     A prison regulation or policy may interfere with the right

of access to the courts if the challenged regulation or policy

bears a rational relation to legitimate penological interests.

See Overton v. Bazzetta, 539 U.S. 126, 133 (2003); Lewis, 518 U.S. at 361; Savard v. Rhode Island, 338 F.3d 23, 30-31 (1st Cir. 2003) cert. denied 540 U.S. 1109 (2004).  Thus, even if an inmate is able to establish that the challenged regulation or policy actually impeded his access to the courts with respect to a specific claim, he is not entitled to relief if the regulation or policy satisfies this requirement.

In this action, LeDoux alleges that Wright, Blomeke and Church denied him adequate access to the RCHOC law library and denied him adequate library resources.  According to LeDoux, the library resources are incomplete, obsolete and poorly maintained.  Because the library is devoid of any state and federal reporters, LeDoux' efforts to obtain copies of decisions are extremely burdensome and time-consuming.  He further alleges that RCHOC policies impede his ability to use the library.  For example, his access to the library and his ability to use legal materials is contingent upon staff availability.  In addition, RCHOC policy requires corrections officers to escort inmates while they use the library and conduct legal research.

According to LeDoux, the above deprivations and policies have interfered with his ability to research, defend and/or prosecute his civil and criminal actions.  Specifically, he

alleges that on June 13, 2006, he filed a petition for a writ of habeas corpus.  Weeks before the hearing on the petition, Wright and Church allegedly denied LeDoux adequate access to the law library, thereby preventing him from preparing for his hearing. In a series of inmate request slips filed in July 2006 and reviewed by Wright and Church, LeDoux requested copies of case law in order to prepare for his hearing and complained that he was denied certain cases and provided with incorrect cases.  The record further reveals that Blomeke allegedly caused certain delays in LeDoux's receipt of research materials and case law. Allegedly as a result of defendants' actions, Ledoux' habeas corpus petition was dismissed.  He has provided a copy of the New Hampshire Superior Court (Rockingham County) order dismissing his petition on July 28, 2006.  Accepting the allegations as true, I conclude that LeDoux has alleged First and Fourteenth Amendment denial of access to the courts claims against Wright, Blomeke and Church.

     B.   <u>Procedural Due Process</u>

    LeDoux alleges that while he was confined at the RCHOC as a pretrial detainee, defendants abridged his Fourteenth Amendment rights by subjecting him to discipline without due process.

        A pretrial detainee has a Fourteenth Amendment

> right to be free from punishment prior to
> conviction.  While a pretrial detainee may be
> disciplined for a specific institutional infraction
> committed during the period of his detention, the
> discipline imposed must be roughly proportionate to
> the gravity of the infraction.  An arbitrary, or
> disproportionate sanction, or one that furthers no
> legitimate penological objective, constitutes
> punishment (and, thus, is proscribed by the
> Fourteenth Amendment).

Surprenant v. Rivas, 424 F.3d 5, 13 (1st Cir. 2005) (citing Bell
v. Wolfish, 441 U.S. 520, 535, 538-9 (1979) and Collazo-Leon v.
U.S. Bureau of Prisons, 51 F.3d 315, 318 (1st Cir. 1995)).
Accordingly, I find that LeDoux' complaints pertaining to the
denial of due process arise under the Fourteenth Amendment.

        1.   Disciplinary Segregation

     Ordinarily, when a prisoner is subjected to disciplinary
sanction, he must prove that the sanction itself was so atypical
of the normal incidents of prison life, and imposed such a
hardship, that he was entitled to due process in order for the
sanction to be constitutionally effected.  Sandin v. Conner, 515
U.S. 472, 483-84 (1995).  Sandin, however, only applies to
convicted inmates who might expect a certain amount of punishment
as typical of the normal incidents of prison life.  Pretrial
detainees, to the contrary, have a constitutionally-protected
liberty interest in avoiding any punishment.  Surprenant, 424

                              12

F.3d at 17.

In <u>Wolff v. McDonnell</u>, 418 U.S. 539, 564 (1974), the Supreme Court identified the due process requirements associated with prison disciplinary hearings.  Those requirements include written notice of the charges at least twenty-four hours in advance of the hearing, the ability to call witnesses and present evidence, and that the hearing be presided over by an impartial decisionmaker.  <u>Id.</u> at 566, 570-71; <u>Surprenant</u>, 424 F.3d at 16. It follows that "a pretrial detainee who is placed in disciplinary segregation as punishment has a right to a due process hearing" and the protections guaranteed by <u>Wolff</u>.  <u>See</u> <u>Mitchell v. Dupnik</u>, 75 F.3d 517, 524 (9th Cir. 1996).

Here, LeDoux alleges a Fourteenth Amendment due process violation arising from the false charges filed by Haywood, Trainor and an unnamed corrections officer and the subsequent disciplinary hearing commenced by Horne, Valencia and Sparks. During the disciplinary hearing, LeDoux allegedly was denied the opportunity to call witnesses and to present documentary evidence in his defense.  He was found guilty on both charges and subjected to sanctions and disciplinary segregation.  LeDoux further alleges that he never received a written statement specifying the reasons for the disciplinary action taken against

him and the sanctions imposed.  LeDoux filed an appeal with
Wright, who overturned the contraband charge and upheld the
security device charge.  Wright allegedly failed to provide
LeDoux with notice of his ruling.

LeDoux' pretrial status entitled him to due process
protections during his hearing and prior to the imposition of
sanctions and punitive segregation.  Accordingly, I find that he
has alleged sufficient facts to state Fourteenth Amendment
procedural due process claims against Haywood, Trainor, Horne and
Wright.  Because LeDoux has failed to allege sufficient predicate
facts against Valencia and Sparks, I recommend that the claims
against them be dismissed.

LeDoux alleges that he was further denied due process when
disciplinary charges were filed against him on June 7, 2006, and
he was placed in disciplinary segregation without first being
afforded a hearing.  Despite the fact that LeDoux was denied a
hearing, Wright, Blomeke and Church confined him in disciplinary
segregation for approximately one month and denied him certain
privileges.  As mentioned above, LeDoux' pretrial status entitled
him to a due process hearing and due process protections prior to
the imposition of sanctions and punitive segregation.
Accordingly, I find that he has alleged sufficient facts to state

14

a Fourteenth Amendment procedural due process claims against
Wright, Blomeke and Church.

     C.   <u>Retaliation</u>

     LeDoux alleges that defendants abridged his First and
Fourteenth Amendment rights by subjecting him to unwarranted
disciplinary actions in retaliation for filing administrative
grievances.  Construed liberally, the complaint alleges
retaliation claims against Haywood, Trainor, Wright and an
unnamed corrections officer.

     "[I]t is well established that prison officials must provide
inmates access to the courts, and prison officials may not harass
or retaliate against an inmate for exercising his right of access
to the courts."  <u>Penrod v. Zavaras</u>, 94 F.3d 1399, 1404 (10th Cir.
1996)(internal citations omitted).  To prevail on a retaliation
claim, an inmate must show: (1) conduct which led to the alleged
retaliation was constitutionally protected; (2) that he suffered
some adverse action at the hands of prison officials; and (3)
that his constitutionally protected conduct was a substantial or
motivating factor in the decision to discipline him.  <u>See</u> <u>Rauser
v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001).

     Here, LeDoux alleges that on May 20, 2006, Haywood and
Trainor filed false disciplinary reports against him in

retaliation for his prosecution of administrative grievances.  He
further alleges that on May 22, 2006, an unnamed corrections
officer filed a false disciplinary report against him in
retaliation for his prosecution of administrative grievances.
Construed liberally, the complaint alleges that Wright was aware
of and condoned the actions of the subordinate officers.  To the
extent the disciplinary charges were filed in reprisal for
LeDoux' exercise of First Amendment freedoms, he may establish a
retaliation claim.  For purposes of preliminary review, I
conclude that he has stated cognizable First and Fourteenth
Amendment retaliation claims against Haywood, Trainor, Wright and
the unnamed corrections officer[2].

---

[2]If LeDoux wishes to pursue his claims against the unnamed
corrections officer, he will have to obtain the defendant's full
name in discovery and appropriately move to amend the complaint.
To this end, upon service of this action on the named defendants,
LeDoux can serve the named defendants with interrogatories to
obtain the full name of the presently unidentified defendant
pursuant to Fed. R. Civ. P. 33(a) which states in pertinent part:

> Without leave of court or written stipulation,
> any party may serve upon any other party
> written interrogatories, not exceeding 25 in
> number including all discrete subparts, to be
> answered by the party served or, if the party
> served is a public or private corporation or a
> partnership or association or governmental
> agency, by an officer or agent, who shall
> furnish such information as is available to
> the party.

II.  <u>Municipal and Supervisory Liability</u>

Construed liberally, the complaint names the RCHOC, a municipal entity, as a defendant in this action.  Municipalities and local government entities are "persons" within the meaning of Section 1983.  <u>See</u> <u>Monell</u>, 436 U.S. at 690.  A municipal entity cannot be held liable under Section 1983 on a theory of *respondeat superior* or vicarious liability; rather the municipality itself must proximately cause the constitutional injury, through promulgation or tacit approval of a policy or custom.  <u>See</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989). To state a viable Section 1983 claim, a plaintiff must allege in substance that the challenged municipal custom or policy was the "moving force" behind the constitutional violations.  <u>See</u> <u>Board of the County Comm'rs v. Brown,</u> 520 U.S. 397, 404 (1997); <u>McCabe v. Life-Line Ambulance Serv.</u>, 77 F.3d 540, 544 (1st Cir. 1996) (citations omitted).  Supervisors similarly can be held liable only on the basis of their own acts or omissions, amounting to reckless or callous indifference to the constitutional rights of others.  <u>See</u> <u>Gaudreault v. Salem</u>, 923 F.2d 203, 209 (1st Cir. 1990).

------

LeDoux is further instructed to forward a summons to this Court with the unidentified defendant's proper name.

In this action, if LeDoux intends to pursue claims against RCHOC, he must, at a minimum, allege that his constitutional deprivations were the product of a municipal custom or policy. Liberally construing the complaint, I conclude that the wrongful conduct ascribed to the RCHOC was the product of an unconstitutional municipal custom or policy.  The alleged deprivations stem from RCHOC policy governing the treatment of pretrial detainees and their access to the RCHOC law library. Construed liberally, the complaint suggests that RCHOC was the "moving force" behind the acts or omissions allegedly taken by certain corrections officers.  Accordingly, I conclude that the complaint states a viable claim premised upon municipal liability against the RCHOC.

Construed liberally, the complaint also names Wright in his official capacity as Superintendent of the RCHOC.  Official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55.  See also Brandon v. Holt, 469 U.S. 464, 471 (1985)(suits against parties in their official capacities treated as suits against the municipality). While Wright's conduct may not rise to the level of deliberate indifference, his acts or omissions may amount to reckless or

callous indifference to LeDoux' constitutional rights.  As an
employee of the RCHOC, Wright had knowledge of the municipal
policy that allegedly caused the underlying deprivations.
Because I find municipal liability as to the RCHOC, I extend that
reasoning to Wright and conclude that the official capacity
claims against him are cognizable for purposes of preliminary
review.

<u>Conclusion</u>

For the reasons stated above, I conclude that LeDoux has
alleged the following claims: (1) First and Fourteenth Amendment
denial of access to the courts claims against Wright, Blomeke and
Church; (2) Fourteenth Amendment due process claims against
Haywood, Trainor, Horne, Wright, Blomeke and Church; and (3)
First and Fourteenth Amendment retaliation claims against
Haywood, Trainor, Wright and an unnamed corrections officer.  I
recommend dismissal of all remaining claims.

If this recommendation is approved, the claims as identified
in this report and recommendation, will be considered for all
purposes to be the claims raised in the complaint.  If the
plaintiff disagrees with the identification of the claims herein,
plaintiff must do so by filing an objection within ten (10) days
of receipt of this report and recommendation, or by properly

moving to amend the complaint.

Any further objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); Unauthorized Practice of Law Committee v. Gordon, 979 F.2d 11, 13–14 (1st Cir. 1992); United States v. Valencia–Copete, 792 F.2d 4, 6 (1st Cir. 1986).

James R. Muirhead
United States Magistrate Judge

Date: November 30, 2006
cc:   Joseph M. LeDoux, pro se